FILED

2015 Mar-30  PM 12:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| CECIELE PARKS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | )     CASE NO.  2:13-cv-0894-SLB |
| THE CITY OF BIRMINGHAM, | ) |
| ALABAMA; EMANUEL ROSATO; | ) |
| TYRONE POLK, | ) |
| | ) |
| Defendants. | ) |

## <u>MEMORANDUM OPINION</u>

This case is presently pending before the court on a Motion for Summary Judgment filed by defendants City of Birmingham, Alabama, Emanuel Rosato, and Tyrone Polk. (Doc. 21.)[1] Plaintiff Ceciele Parks filed this suit against defendants, the City and its police officers Rosato and Polk, following her arrest for disorderly conduct on June 1, 2011. Parks alleges that the arrest was unlawful and that the force used to arrest her was excessive in violation of the Fourth Amendment of the United States Constitution. She also alleges state-law causes of action for false imprisonment and assault and battery (state-law excessive force) against defendants.  Upon consideration of the record, the submissions of the parties, the arguments

---

[1] Reference to a document number, ("Doc. ___"), refers to the number assigned to each document as it is filed in the court's record.  Page numbers for documents refer to the page number assigned by the court's CM/ECF system, except that page numbers for deposition transcripts refer to page numbers of the original deposition transcript.

of counsel, and the relevant law, the court is of the opinion that defendants' Motion for Summary Judgment, (Doc. 21), is due to be granted in part and denied in part.

## I. SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met its burden, the non-moving party must go beyond the pleadings and show that there is a genuine issue of fact for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1); *see also Clark*, 929 F.2d at 608 ("it is never enough simply to state that the non-moving party cannot meet its burden at trial").

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "[C]ourts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)). Nevertheless, the non-moving party "need not be given the benefit of every inference but only of every reasonable inference." *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999) (citing *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988)); *see also Scott*, 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

## II.  <u>STATEMENT OF FACTS</u>[2]

On June 1, 2011, plaintiff and her foster son, LaDanta Howard, drove to Wings R King, a restaurant located in Birmingham, Alabama, to return a pizza plaintiff's mother had purchased the previous day. (Doc. 22-4 at 21-24.) Plaintiff's mother had bought two pizzas, and plaintiff and her family had eaten a few pieces, which caused several people to become sick from food poisoning. (*Id.* at 24, 26.) When they arrived at the restaurant, Howard walked

---

[2] The court recognizes that defendants dispute plaintiff's account of the incident on June 1, 2011. However, for purposes of summary judgment, the court must view the facts in the light most favorable to plaintiff, the non-movant.

inside and attempted to return the pizza while plaintiff remained in the car.[3] (*Id.* at 26.) A female employee told Howard she needed to call the manager to address his problem, and once on the phone, the manager said he would not accept the returned pizza and that he would be at the restaurant in ten to fifteen minutes to talk with Howard. (*Id.* at 28-29.)

Howard returned to the car to explain the situation to plaintiff, and plaintiff then called 911 because she wanted a record or her son's attempt to return the spoiled pizza. (*Id.* at 29.) Approximately five minutes later, Officers Polk and Rosato arrived and parked around the corner from the spot in which plaintiff was parked. (*Id.* at 30-32.) Howard approached the officers to explain the situation. (*See id.*) One of the officers asked Howard for his driver's license, and around this time, the female employee walked outside and told the officers that Howard had threatened to hit her with the pizza box while he was inside the restaurant attempting to return the pizza. (*Id.* at 33.) One of the officers handed Howard's license to the employee, so she could write down his information. (*Id.*) In response to these events, Howard

---

[3] At times, plaintiff's testimony relates to facts that occurred outside her presence and is based on Howard's description of those facts to plaintiff at a later time. Therefore, those facts constitute otherwise inadmissible hearsay. While courts generally do not consider inadmissible hearsay when deciding a motion for summary judgment, "the district court may consider a hearsay statement if the statement could be reduced to admissible form at trial," *Hill v. Manning*, 236 F. Supp. 2d 1292, 1297 (M.D. Ala. 2002) (citing *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir.1999)), and here, it seems likely that Howard would testify to these facts at trial. Furthermore, the court may consider evidence that would otherwise constitute hearsay when a party offers it for a purpose other than proving the truth of the matter asserted. *See* Fed. R. Evid. 801. Additionally, the court notes that the facts for which plaintiff does not have personal knowledge, but rather learned about through Howard, are not critical to the court's analysis of whether summary judgment should be granted.

called plaintiff, and plaintiff drove around the corner, parked, and got out of the car.[4] (Doc. 22-4 at 34.) According to plaintiff, Officer Polk was cursing and not taking the situation seriously. (Doc. 22-4 at 37.)

Shortly thereafter, Mr. Mo, the owner of Wings R King, arrived, shook hands with the officers and began talking to them about football. (Doc. 22-4 at 40-41; *see* Doc. 22-1 at 23.) According to plaintiff, Mr. Mo and the officers appeared to be friends. (Doc. 22-4 at 40.) Some time later, Mr. Mo walked over to plaintiff and Howard and said that they had not purchased pizza from him. (*Id.* at 41.) Plaintiff conceded that she had not purchased the pizza but told Mr. Mo that her mother had purchased it. (*Id.*) Plaintiff called her mother on a cell phone and turned on the speaker, and plaintiff's mother explained to Mr. Mo that she had come in the restaurant the night before and placed a big order. (*Id.* at 43.) Mr. Mo remembered the order and stated that plaintiff's mother should have called the previous night, when the pizza made her family sick. (*Id.*) Plaintiff testified that, throughout this interaction, Mr. Mo was cursing and that Mr. Mo then told plaintiff he would not "take the f'ing pizzas back." (*Id.* at 44-45.) Howard responded by asking the officers why they were allowing Mr. Mo to disrespect him and his mother. (*Id.* at 45-46.) Howard told the officers

---

[4] The court notes that it considers this testimony for the non-hearsay purpose of explaining why plaintiff drove around the corner and got out of her car and not the hearsay purpose of showing that the officers, in fact, took Howard's license information and gave it to the female employee.

5

that if he and plaintiff were cursing, the officers would have already arrested them. (*Id.* at 46.)

Mr. Mo continued to tell plaintiff and Howard that he would not take the pizza back, and when he said "y'all can do whatever the fuck you want to do with the pizza," Howard threw the pizza box[5] onto the parking lot, and pieces of pizza fell out of the box in several different directions. (*Id.* at 49.) Polk and Rosato pulled out pepper spray and told Howard to calm down or else they would take him to jail. (*Id.* at 50.) Howard refused to pick up the pizza, and by this point, he was cursing and very tense. (*Id.* at 51.) According to plaintiff, the situation had escalated at this point, so plaintiff attempted to calm Howard down by telling him to get in the car, which he then did. (*Id.* at 52.) Plaintiff acknowledged that Howard "blew up at the wrong time . . . and [acted in a way] he shouldn't have." (*Id.*)

Plaintiff told the officers she would pick up the pizza, and Polk responded that he wanted Howard "to go get the damn pizza." (*Id.* at 53, 55.) Plaintiff nevertheless picked up a few pieces of pizza,  put them back in the box, and put the box in the trunk of her car. (*Id.* at 56-58.) Polk told her "to pick up all the fucking pieces of pizza." (*Id.* at 56-57) Because some pieces were farther away, plaintiff responded that a stray dog could eat the rest. (*Id.* at 57.)  Plaintiff testified that, during this time, "there was no traffic in the parking lot where we were speaking with the officers." (Doc. 26-1 ¶ 4.) Neither Polk nor Rosato asked plaintiff

---

[5] Apparently, Howard had only one pizza box in his hand at this time. (*See* Doc. 22-4 at 26 ("[W]e took the pizzas back.").)

6

or Howard to move, and plaintiff's car remained parked in a marked parking space. (*Id.*) After picking up the pizza, plaintiff attempted to get in her car. (Doc. 22-4 at 60.) As she put one foot in the car, she told her mother, who was still on the phone, that the situation was "fucked up." (*Id.*) Plaintiff spoke to the officers and her mother using a normal tone of voice. (Doc. 26-1 ¶ 2.)

At this time, Polk approached plaintiff, pulled her out of the car, and told her that she was going "to fucking jail." (Doc. 22-4 at 62-63.) Plaintiff asked why, but Polk did not respond, and he then slapped plaintiff's face, causing her glasses to fall off, and pepper sprayed her. (*Id.* at 63-64.) According to plaintiff, she did not resist Polk and could not see as a result of the pepper spray. (*Id.* at 64.) Rosato ran over to ask what was happening, and after Polk told him plaintiff was going to jail, Rosato handcuffed plaintiff. (*Id.* at 65, 67, 69.) Even though plaintiff could not see, she could differentiate Polk and Rosato by their voices. (*Id.* at 65-66.) Plaintiff testified that, once Rosato handcuffed her, Polk continued to pepper spray her. (*Id.* at 70.) Plaintiff tried to avoid the pepper spray by moving her head down, but she did not resist arrest with her arms, which were handcuffed. (*Id.* at 70-71.) Howard, who was still sitting in the car at this time, had picked up plaintiff's phone and was telling plaintiff's mother that police were arresting plaintiff. (*Id.* at 66.)

At this point, Rosato was behind plaintiff, and according to plaintiff, probably lost his balance as he was backing away from the pepper spray, which caused Rosato and plaintiff to fall. (*Id.* at 73.) Plaintiff fell on top of Rosato, and Polk fell on top of plaintiff. (*Id.* at 72.)

According to plaintiff, Polk then stood up, and plaintiff felt a sharp pain, indicating that Polk kicked her. (*Id.* at 74-75.) As plaintiff began screaming for help, Howard exited the car, and the officers told him to get back. (*Id.* at 75-76.) When plaintiff asked the officers to call 911, they responded by telling her again that she was going to jail. (*Id.* at 78.) Plaintiff yelled for Howard to call 911, which he did, and an ambulance arrived some time thereafter. (*Id.* at 79, 82.) The officers arrested Howard after he called 911, and by this time, plaintiff was lying face down on the ground. (*Id.* at 79-80.)

When the paramedics arrived, plaintiff was placed on a stretcher and transported by ambulance to Cooper Green Hospital. (*Id.* at 83.) Plaintiff was released from Cooper Green without any medical treatment, and Polk and Rosato then drove her to the UAB psych ward for another medical exam. (*Id.* at 84-85, 89-90.) Sometime thereafter, plaintiff was booked into jail on the charge of disorderly conduct and released around 12:00 or 1:00 p.m. the next day. (*Id.* at 91, 100-01.) After seeing her primary physician, a magnetic resonance imaging ("MRI") test on plaintiff's knee showed tendon damage in plaintiff's knee for which plaintiff underwent surgery on June 22, 2011. (*Id.* at 91-94.)

## III. <u>DISCUSSION</u>

## A. DEFENDANTS CITY OF BIRMINGHAM AND EMANUEL ROSATO

"Parks agrees to the dismissal of defendant Rosato and the City . . . ." (Doc. 26 at 3.) Therefore, without opposition, defendants' Motion for Summary Judgment will be granted on all claims against the City and Rosato, and those claims will be dismissed.

8

## B.  TYRONE POLK

Plaintiff alleges federal law claims under 42 U.S.C. § 1983 against Polk for unlawful seizure and excessive force in violation of the Fourth Amendment, and state law claims against Polk for false imprisonment and assault and battery. (Doc. 1 at 9, 12, 15-16.) Defendant Polk moves for summary judgment on all four claims and argues that he is entitled to qualified immunity from plaintiff's § 1983 claims and discretionary function immunity from plaintiff's state law claims. (Doc. 22 at 9, 20.)

### 1. FEDERAL CLAIMS

Section 1983 "provides a federal remedy for the deprivation of rights, privileges, or immunities protected by the Constitution or the laws of the United States." *Von Stein v. Brescher*, 904 F.2d 572, 578 (11th Cir. 1990). "To sustain a cause of action based on section 1983, [a plaintiff] must establish two elements: (1) that [she] suffered a deprivation of 'rights, privileges or immunities secured by the Constitution and laws' of the United States, and (2) that the act or omission causing the deprivation was committed by a person acting under color of law." *Wideman v. Shallowford Cmty. Hosp., Inc.*, 826 F.2d 1030, 1032 (11th Cir. 1987). There is no dispute that defendant Polk committed the acts complained of under the color of state law. Therefore, the court must determine whether a genuine issue of material facts exists as to whether plaintiff suffered the deprivation of a constitutional right and whether immunity protects Polk from suit.

"To receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir.2002) (citation and internal quotations omitted). If the parties do not dispute that the official's actions were discretionary, the burden shifts to the plaintiff to satisfy the two-part qualified immunity test. *Crawford v. Carroll*, 529 F.3d 961, 977 (11th Cir. 2008). Under the two-part test, the plaintiff must "show that the defendant committed a constitutional violation *and* that the constitutional right the defendant violated was clearly established at the time he committed the violation." *Angeline v. City of Hoover, Ala.*, 352 F. App'x 332, 334 (11th Cir. 2009). Because the parties do not dispute that Polk acted within the scope of his discretionary authority, the remaining issue for the court is whether the two-step qualified immunity test is satisfied as to each of plaintiff's Fourth Amendment claims.

**a. Unlawful Seizure**

"Under the Fourth Amendment, an individual has a right to be free from 'unreasonable searches and seizures[,]' and an arrest is a seizure of the person." *Case v. Eslinger*, 555 F.3d 1317, 1326 (11th Cir. 2009) (quoting *Skop v. City of Atlanta, Ga.* 485 F.3d 1130, 1137 (11th Cir. 2007)) (alterations omitted) (internal quotations omitted). The existence of probable cause determines the reasonableness of an arrest under the Fourth Amendment. *Id*. "A warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim, but the existence of probable cause at the time of

10

arrest constitutes an absolute bar to a section 1983 action for false arrest." *Id.* at 1326-27 (quoting *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004) (quotations and alteration omitted); *see also Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990) ("[A]n arrest without probable cause to believe a crime had been committed violate[s] the Fourth Amendment.").

"When the constitutional validity of an arrest is challenged, it is the function of the court to determine whether the facts available to the arresting officers at the moment of the arrest support a finding of probable cause." *United States v. Allison*, 953 F.2d 1346, 1350-51 (11th Cir. 1992). "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *Case*, 555 F.3d at 1327 (quoting *United States v. Gonzalez*, 969 F.2d 999, 1002 (11th Cir. 1992)); *see also Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002) (requiring that arrest be objectively reasonable based on the totality of the circumstances).

An officer who lacks probable cause to arrest may nonetheless be entitled to qualified immunity provided that arguable probable cause to arrest existed. *Id.* (citing *Ferraro*, 284 F.3d at 1195). "Arguable probable cause exists [when] reasonable officers in the same circumstances and possessing the same knowledge as the [defendant] could have believed that probable cause existed to arrest." *Id.* (quotation omitted). "Whether a particular set of facts gives rise to probable cause or arguable probable cause to justify an arrest for a

particular crime depends . . . on the elements of the crime." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1333 (11th Cir. 2004).

In cases alleging wrongful or false arrest, "[the Eleventh Circuit has] frequently framed the 'clearly established' prong as an 'arguable probable cause' inquiry." *Poulakis v. Rogers*, 341 F. App'x 523, 526 (11th Cir. 2009). Thus, "[q]ualified immunity [still] applies when there was arguable probable cause for an arrest even if actual probable cause did not exist." *Crosby*, 394 F.3d at 1332 (citing *Jones v. Cannon*, 174 F.3d 1271, 1283 n.3 (11th Cir. 1999)). And, "[a]rguable probable cause exists if, under all of the facts and circumstances, an officer reasonably could–not necessarily would–have believed that probable cause was present." *Id.* at 1332-33 (citing *Durruthy v. Pastor*, 351 F.3d 1080, 1089 (11th Cir. 2003)). "Arguable probable cause does not require an arresting officer to prove every element of a crime or to obtain a confession before making an arrest, which would negate the concept of probable cause and transform arresting officers into prosecutors." *Scarbrough v. Myles*, 245 F.3d 1299, 1302-03 (11th Cir. 2001).

As instructed by the Eleventh Circuit, to determine whether plaintiff "has shown that the right violated was clearly established at the time of the violation," – whether defendant Polk had arguable probable cause to arrest plaintiff for disorderly conduct – this court must look to the precedent of the Supreme Court, the Eleventh Circuit, and the Supreme Court of

Alabama, which "interpret[s] and appl[ies] the law in similar circumstances."[6] *Oliver v. Fiorino*, 586 F.3d 898, 907 (11th Cir. 2009) (citations omitted). "[I]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Id.* (quoting *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 926 (11th Cir. 2000) (internal quotations omitted)). The Eleventh Circuit has determined that "the law [is] clearly established that an arrest without probable cause to believe a crime ha[s] been committed violate[s] the Fourth Amendment." *Von Stein*, 904 F.2d at 579; *see, e.g., Herren v. Bowyer*, 850 F.2d 1543, 1547 (11th Cir. 1988).

Plaintiff argues that Polk did not have probable cause or arguable probable cause to arrest her for disorderly conduct. (Doc. 26 at 8.) Defendant contends that plaintiff's behavior undoubtedly constituted arguable probable cause for plaintiff's arrest, citing the officers' deposition testimony that plaintiff "caused public alarm[,] . . . had people com[ing] out of the restaurant . . . looking at her because of her actions[, and] imped[ed] the flow of traffic" as evidence supporting his argument. (Doc. 22 at 22.) It bears emphasis to note that the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Furthermore, "courts are required to view the facts and draw reasonable inferences 'in the light most favorable to

---

[6] The Eleventh Circuit noted that for § 1983 claims, courts should "look to the highest court of the pertinent state to 'clearly establish' the law . . . because decisional law drawn from intermediate state courts is too unsettled and too readily subject to split authority to put an officer on clear notice that his conduct would be unlawful." *See Poulakis*, 341 F. App'x at 528 (footnote omitted).

the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)). Despite defendant Polk's repeated attempts to have the court view the evidence in the light most favorable to him, the court accepts plaintiff's properly supported version of the facts.

Outside of Wings R King, plaintiff got out of her car, told her son to calm down and get in the car, and picked up pieces of pizza that her son had tossed on the ground. Her only statement to Polk and Rosato was that a stray dog could eat the remaining pieces of pizza that were laying further away on the ground. There was no traffic during this time, and the officers never asked plaintiff to move. Plaintiff never raised her voice, but rather stated to her mother, in a normal tone of voice, that the situation was "fucked up," (Doc. 22-4 at 60), as plaintiff was stepping into her car. Polk then pulled plaintiff out of her car and made the decision to arrest plaintiff, stating that she was going "to fucking jail." (*Id.* at 62-63.)

Alabama's disorderly conduct statute states, "A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he or she . . .(1) Engages in fighting or in violent tumultuous or threatening behavior[;] (2) Makes unreasonable noise[;] (3) In a public place uses abusive or obscene language or makes an obscene gesture[;] (4) Without lawful authority, disturbs any lawful assembly or meeting of persons[;] (5) Obstructs vehicular or pedestrian traffic, or a transportation facility. . . ." Ala. Code § 13A-11-7(a).

Here, construing the facts in favor of plaintiff, plaintiff did not make unreasonable noise, much less raise her voice, and she did not impede traffic, as there was no traffic in the Wings R King parking lot while plaintiff was speaking with the officers. While defendant contends that he was alarmed by the presence of Howard, plaintiff testified that Howard remained in the car from the time she offered to pick up the pizza until she yelled for Howard to call an ambulance. (*See* Doc. 22 at 16.) Plaintiff has cited ample case law showing that Polk had "fair warning" that he could not arrest plaintiff on a disorderly conduct charge for simply telling her mother in a normal tone of voice that the situation was "fucked up."[7] (Doc. 26 at 11-13.) See *Walker v. Briley*, 140 F. Supp. 2d 1249, 1258-59 (N.D. Ala. 2001), for its analysis of case law "clearly establish[ing]" that certain conduct is not violative of Alabama's disorderly conduct statute:

> [T]he Alabama courts [have], in order to avoid potential First Amendment infirmities, sharply and consistently limited what conduct and attendant circumstances are required for a violation of the disorderly conduct statute, especially where the defendant is addressing a police officer, and even more so where such exchange is not heard by other members of the public, as Walker claims occurred here. Compare *Duncan v. State*, 686 So.2d 1279, 1281–82 (Ala.Cr.App.1996) (vehicle passenger's refusal to produce driver's license for officer and statement of "fu* * you" to officer did not support

---

[7] Defendant makes a last-ditch effort to prevail on his summary judgment motion by arguing that plaintiff's unlawful seizure claim against Polk fails because Rosato, not Polk, arrested plaintiff by placing handcuffs on her. (Doc. 27 at 11-12.) However, plaintiff testified that Polk made the decision to arrest her. (Doc. 22-4 at 63.) Rosato's assistance in handcuffing plaintiff does not somehow negate Polk's critical decision-making role in plaintiff's arrest, nor does it change the violent manner in which Polk effected plaintiff's arrest.

disorderly conduct conviction, where the passenger remained sitting in truck during conversation, passenger had not broken any laws when officer asked to see license, and passenger's statement did not constitute "fighting words"); *R.I.T. v. State*, 675 So.2d 97, 98–100 (Ala.Cr.App.1995) (juvenile's statement of "fu* * you" to police officer, spoken in front of only family members and as juvenile was walking away from officer, did not constitute "fighting words," and thus juvenile could not be adjudicated delinquent for this statement based on finding of disorderly conduct); *Robinson v. State*, 615 So.2d 112, 113–14 (Ala.Cr.App.1992) (No offense committed where defendant shouted at police officer on patrol, "fu* * " and the officer's name, because such did not amount to "fighting words," absent evidence that statement was for purpose of provoking physical retaliation or causing immediate breach of the peace); *L.M.A.W. v. State*, 611 So.2d 497, (Ala.Cr.App.1992) (student who was told that she was being expelled from school, who said, "I don't need this fu* *in' school anyway" as she walked down a hallway and then violently slammed the door behind her was not guilty of disorderly conduct where police chief was the only person who heard her remark); *Swann v. City of Huntsville*, 455 So.2d 944, 950–51 (conviction for disorderly conduct reversed, although evidence suggested the defendant was "loud," where no evidence showed that he made noise unreasonable under the circumstances, and his comments, "This is some sh* * .... Damn you; you're just doing this because I'm black. You're bringing us back a hundred years," did not contain a threat and did not have the likelihood of causing a violent response by the police officer to whom they were addressed); and *Skelton v. City of Birmingham*, 342 So.2d 933, 936–37 (Ala.Cr.App.), remanded, 342 So.2d 937 (Ala.1976) (holding that the language, "Are you big sh* *s going to move or am I going to have to go around," deemed not "fighting words" when addressed to a police officer), with *Hutchins v. City of Alexander City*, 822So.2d 459, ——, 2000 WL 572726, *4 (Ala.Cr.App.2000) (finding defendant had made "unreasonable noise" when he screamed, "Don't you fu* *ing tell me what to do," in front of police officers and members of the public in a public area of the police station); and *Smith v. City of Anniston*, 668 So.2d 96, 98 (Ala.Cr.App.1995) (evidence was sufficient to sustain conviction for disorderly conduct where the defendant incited numerous others around him to become disorderly by yelling at a police officer, "Suck my di* * " and "Well, I'm on private fu* *ing property and you can't arrest me").

The court agrees with plaintiff that "no reasonable officer would have believed

[plaintiff] committed any crime by telling her mother she thought the situation was "fucked

16

up." Accordingly, construing the facts in favor of plaintiff, the court finds that Polk did not have arguable probable cause to arrest plaintiff for disorderly conduct.  Therefore, defendant Polk is not entitled to summary judgment on his qualified immunity defense, and defendant's Motion for Summary Judgment will be denied as to plaintiff's § 1983 unlawful seizure claim against Polk in his individual capacity.

### b. Excessive Force

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the right to be free from excessive force during the course of a criminal apprehension." *Oliver v. Fiorino*, 586 F.3d 898, 905 (11th Cir. 2009) (citing *Graham v. Connor*, 490 U.S. 386, 394-95 (1989)). In determining whether an officer's use of force is excessive, "[t]he question is whether the officer's conduct is objectively reasonable in light of the facts confronting the officer." *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002) (citing *Graham*, 490 U.S. at 396-97)). The reasonableness of the use of force is measured objectively, *Crenshaw v. Lister*, 556 F.3d 1283, 1290 (11th Cir. 2009), and it is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham,* 490 U.S. at 397. The examination of reasonableness allows for the fact that "police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation."  *Oliver*, 586 F.3d at 905-06 (citing *Graham*, 490 U.S. at 396-97).

Plaintiff alleges that Polk used unwarranted force that resulted in injury.  (Doc. 1 at 12-13.)  An evaluation of the reasonableness of an officer's use of force requires the court to balance the nature and quality of the intrusion and countervailing government interests. *Crenshaw*, 556 F.3d at 1290 (citing *Graham,* 490 U.S. at 396). "This analysis 'requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id*. (quoting *Graham*, 490 U.S. at 396).  Other considerations include: "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, [and] (3) the extent of the injury inflicted."[8] *Id*. (citing *Hadley*, 526 F.3d at 1329-30) (identifying factors but recognizing invalidation of the subjective element)).

If the court finds that Polk violated plaintiff's constitutional right, the court must then determine whether the right violated was clearly established. *Lee*, 284 F.3d at 1197. The Eleventh Circuit has noted, "[W]e have no difficulty finding that by September 2003, previous case law clearly established that officers may not use excessive force against a non-resisting suspect who has already been subdued." *Reese v. Herbert*, 527 F.3d 1253, 1274 n.33 (11th Cir. 2008) (citing *Hadley v. Gutierrez*, No. 06-12605, 2008 WL 1947008, at *7

---

[8] In *Lee*, 284 F.3d at 1198 n.7, the Eleventh Circuit noted that the fourth factor, the "subjective prong examining whether the force was applied maliciously, . . . has been eliminated from the analysis by *Graham* and other cases establishing that the excessive force inquiry should be completely *objective*, therefore excluding consideration of the officer's intentions." *Id.* (citing *Nolin v. Isbell*, 207 F.3d 1253, 1257 n.3 (11th Cir. 2000)).

. . . (11th Cir. May 6, 2008)). The Eleventh Circuit specifically addressed a police officer's use of pepper spray during an arrest in *Vinyard v. Wilson*, 311 F.3d 1340 (11th Cir. 2002), in which an officer used pepper spray on an arrestee who was in the back of a police car with her hands cuffed behind her back. The court reversed the district court's grant of qualified immunity, holding that "no factually particularized, preexisting case law was necessary for it to be very obvious to every objectively reasonable officer facing Stanfield's situation that Stanfield's conduct during the jail ride violated Vinyard's constitutional right to be free of the excessive use of force." *Id.* at 1355.

The Eleventh Circuit applied *Vinyard*'s holdings in *Reese v. Herbert*, 527 F.3d 1253 (11th Cir. 2008), and *Brown v. City of Huntsville, Ala.*, 608 F.3d 724 (11th Cir. 2010), denying qualified immunity in both to officers who pepper sprayed an arrestee who "was not suspected of having committed a serious crime, did not pose an immediate threat of harm to anyone, and was not actively resisting or evading arrest." *See Brown*, 608 F.3d at 738 (quoting *Reese*, 527 F.3d at 1273-74) (internal quotations omitted); *see also id.* at 739-40 (holding that "an objectively reasonable police officer would have known it was unlawful to use pepper spray and other force against an arrestee who was suspected only of a minor offense (playing music too loud), was not threatening the officer or the public, was not attempting to flee, and who had communicated her willingness to be arrested").

Again, defendant erroneously bases his qualified immunity defense on his version of the facts. However, viewing the facts in the light most favorable to plaintiff, the *Graham*

factors all support plaintiff's excessive force claim. First, plaintiff was not arrested for a serious crime. She was suspected only of blocking traffic and causing public alarm by yelling. Second, the evidence does not support a finding that plaintiff posed a threat to Polk, Rosato, or anyone else. Third, plaintiff did not resist arrest, as she had no time in which to do so. Polk pulled plaintiff out of her car and slapped her face, causing her glasses to fall. He then pepper sprayed plaintiff repeatedly, including after Rosato handcuffed her. Plaintiff tried to lower her head to avoid the pepper spray, but she never resisted Polk's force. Furthermore, plaintiff sustained an injury requiring surgery, which plaintiff argues is attributable to the force Polk inflicted on plaintiff when he kicked her. Based on the foregoing facts, the court finds that Polk's use of force against plaintiff was objectively unreasonable and, therefore, violative of plaintiff's Fourth Amendment right to be free from excessive force.

Furthermore, the court concludes that no objectively reasonable officer would have thought it was lawful to slap, pepper spray, and kick an arrestee who was suspected only of yelling loudly and impeding the flow of traffic in a parking lot and was neither threatening the officers nor attempting to resist arrest. Polk pepper sprayed plaintiff both before and after Rosato hand cuffed her, thereby violating clearly established law prohibiting the use of pepper spray on an arrestee who is not suspected of a severe crime, who does not pose an immediate danger to anyone, and who was not resisting arrest or attempting to flee. *See Brown*, 608 F.3d at 738-40. Therefore, Polk is not entitled to qualified immunity based on

20

the foregoing facts, and summary judgment is due to be denied as to plaintiff's § 1983 excessive force claim.

## 2. STATE LAW CLAIMS

The Alabama legislature granted statutory immunity from state tort liability to municipal police officers for "conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties." Ala. Code § 6-5-338(a).[9]  Alabama state courts have afforded discretionary function immunity to officers, so long as the officer's

---

[9]Section 6-5-338(a) and (b) state:

(a)  Every peace officer, except constables, who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or municipality thereof, or by an agency or institution, corporate or otherwise, created pursuant to the Constitution or laws of this state and authorized by the Constitution or laws to appoint or employ police officers or other peace officers, and whose duties prescribed by law, or by the lawful terms of their employment or appointment, include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such *shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties*.

(b)  *This section is intended to extend immunity only to peace officers and governmental units or agencies authorized to appoint peace officers*. No immunity is extended hereby to any private non-governmental person or entity, including any private employer of a peace officer during that officer's off- duty hours.

Ala. Code § 6-5-338 (a) & (b) (emphasis added).

21

actions are (1) within his discretion and (2) are not done willfully, in bad faith, or with malice. *City of Birmingham v. Sutherland*, 834 So. 2d 755, 759 (Ala.), *cert. denied* 537 U.S. 1018 (2002); *see also Roberts v. City of Geneva*, 114 F. Supp. 2d 1199, 1216 (M.D. Ala. 2000) (quoting *Couch v. City of Sheffield*, 708 So. 2d 144, 153 (Ala. 1998) (police officers "are entitled to immunity unless their conduct was 'so egregious as to amount to willful or malicious conduct or conduct engaged in bad faith.'")).

"The restatement of State-agent immunity as set out in [*Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000)], now governs the determination of whether a police officer is entitled to immunity under § 6-5-338 (a)." *Ex parte City of Tuskegee*, 932 So. 2d 895, 904 (Ala. 2005).  Under the test defined by *Cranman*, and subsequently modified by *Hollis v. City of Brighton*:

> A State agent *shall* be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's . . . (4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons, *or serving as peace officers under circumstances entitling such officers to immunity pursuant to § 6-5-338(a), Ala. Code 1975.*

*Hollis v. City of Brighton*, 950 So. 2d 300, 309 (Ala. 2006) (modifying standard set forth in *Cranman*, 792 So. 2d at 405)). However, "a State-agent *shall not* be immune from civil liability" in his individual capacity either:  (1) when required by law; or (2) "when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law." *Cranman*, 792 So. 2d at 405.

22

Courts in Alabama utilize a "burden-shifting process when a party raises the defense of State-agent immunity." *Ex parte Kennedy*, 992 So. 2d 1276, 1282 (Ala. 2008) (internal quotations omitted) (citing *Ex parte Estate of Reynolds*, 946 So. 2d 450, 452 (Ala. 2006)). A state-agent asserting immunity bears the initial "burden of demonstrating that the plaintiff's claims arise from a function that would entitle the State-agent to immunity." *Id*. (citing *Ex parte Estate of Reynolds*, 946 So. 2d at 452). Should he do so, "the burden shifts to the plaintiff to show that one of the two categories of exceptions to State-agent immunity recognized in *Cranman* is applicable." *Id*. The applicable *Cranman* standard specifically provides immunity to state-agents performing or attempting to perform an arrest. *Cranman*, 792 So. 2d at 405.

In this case, the parties do not dispute that, at the time of the relevant conduct, Polk was "exercising judgment in the enforcement of the criminal laws of the State." *Hollis*, 950 So. 2d at 309. Thus, plaintiff bears the burden of proving that Polk is not entitled to immunity because he acted "willfully, maliciously, fraudulently, in bad faith, beyond his authority, or under a mistaken interpretation of the law." *Cranman*, 792 So. 2d at 405. In *Borders v. City of Huntsville*, 875 So. 2d 1168, 1179 (Ala. 2003), the Alabama Supreme Court addressed the issue of "whether a peace officer making a warrantless arrest on a charge based upon conduct the officer witnessed is entitled to discretionary-function immunity in a subsequent civil action after the arrestee is acquitted." The Alabama Supreme Court resolved the question by determining that the absence of arguable probable cause defeats the officer's claim to

23

immunity under Ala. Code § 6-5-338. *Borders*, 875 So. 2d at 1180. Under the arguable probable cause standard, the court must ask whether, construing the evidence in the light most favorable to the plaintiff, 'no reasonable police officer would have believed that he had probable cause to arrest.'" *Harris v. City of Prattville*, No. 2:07-cv-349-WHA, 2008 WL 2704684, at *16 (M.D. Ala. July 7, 2008) (citing *Borders*, 875 So. 2d at 1180).

### a. False Imprisonment

False imprisonment, under Alabama law, is the "unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty." Ala. Code § 6-5-170. "If a police officer has no arguable probable cause under the Fourth Amendment to arrest a plaintiff without a warrant for disorderly conduct, no probable cause exists for [the] purpose of plaintiff's state law claim of false imprisonment." *Harris*, 2008 WL 2704684, at *16 (citing *Stovall v. Allums*, No. 1:04-CV-659-F(WO), 2005 WL 2002069, at *9 (M.D. Ala. Aug. 16, 2005); *Nesmith v. Alford*, 318 F.2d 110, 122 (5th Cir. 1963) (equating Alabama probable cause standard for malicious prosecution with the federal standard)). Without arguable probable cause to effectuate a warrantless arrest, a police officer is not entitled to State-agent immunity. *Harris*, 2008 WL 2704684, at *16 (applying Alabama law established in *Borders*, 875 So. 2d at 1181-82).

For purposes of defendant Polk's Motion for Summary Judgment and consistent with the court's finding above in its discussion of plaintiff § 1983 unlawful seizure claim, the court finds that Polk acted without arguable probable cause to arrest plaintiff for disorderly

conduct.  Accordingly, absent arguable probable cause, Polk is not entitled to State-agent immunity as to plaintiff's state law claim for false imprisonment, and defendant's Motion for Summary Judgment with respect to this claim is due to be denied.

### b.  Assault and Battery

The Supreme Court of Alabama has defined assault as "an intentional, unlawful offer to touch the person of another in a rude or angry manner under such circumstances as to create in the mind of the party alleging the assault a wellfounded fear of an imminent battery, coupled with the apparent present ability to effectuate the attempt, if not prevented." *Wright v. Wright*, 654 So. 2d 542, 544 (Ala. 1995) (quoting *Allen v. Walker*, 569 So. 2d 350, 351 (Ala. 1990) (internal quotations omitted). A battery is a successful assault, and consists of touching another in a hostile manner. *Surrency v. Harbison*, 489 So. 2d 1097, 1104 (Ala. 1986); *Mann v. Darden*, 630 F. Supp. 2d 1305, 1315 (M.D. Ala. 2009) (requiring proof that defendant touched plaintiff, that he intended to touch plaintiff, and that the touching was conducted in a harmful or offensive manner, in order to prevail on battery claim).

Defendant argues that plaintiff cannot show that Polk "acted willfully, maliciously, fraudulently, in bad faith, or beyond his . . . authority," and thus, defendant is entitled to discretionary function immunity. (Doc. 22 at 14.) Once again, defendant improperly relies on the officers' testimony to support his argument and completely ignores plaintiff's testimony. Plaintiff responds that just as "a reasonable jury can conclude Polk lacked arguable probable cause and used excessive force, in violation of the U.S. Constitution and

§ 1983[,] [a] reasonable jury can also conclude defendant acted willfully, maliciously, in bad faith, [and] beyond [his] authority." (Doc. 26 at 18.)

Excessive force during an arrest constitutes assault and battery. *Franklin v. City of Huntsville*, 670 So. 2d 848, 852 (Ala. 1995). "As the Alabama Supreme Court has held, 'before force can be used in making an arrest, probable cause must exist to make a lawful arrest.'" *Mann*, 630 F. Supp. 2d at 1316 (quoting *Franklin v. City of Huntsville*, 670 So. 2d 848, 852 (Ala. 1995) ("However before ***any*** force can be used in making an arrest, probable cause must exist to make a lawful arrest.") (emphasis added)); *see also id.* ("Because the facts that would enable a determination of arguable probable cause to be made are in genuine dispute, Darden is not entitled to immunity for the force used in the course of the incident that led to Mann's disorderly conduct charge."). The court finds that the absence of probable cause is dispositive of defendant's Motion for Summary Judgment on plaintiff's state law assault and battery claim against Polk. As the court has already found that Polk lacked arguable probable cause to arrest plaintiff, Polk had no discretion to willfully use force against plaintiff. For this reason and the reasons enumerated above in the court's § 1983 excessive force analysis, the court finds that Polk is not entitled to State-agent immunity. Therefore, defendant Polk's Motion for Summary Judgment as to plaintiff's assault and battery claim will be denied.

## IV.  **CONCLUSION**

For the forgoing reasons, the court is of the opinion that Defendants' Motion for Summary Judgment, (Doc. 21),  is due to be granted as to plaintiff's claims against defendants City of Birmingham, Alabama and Emanuel Rosato and denied as to plaintiff's claims against defendant Polk.

**DONE** this 30th day of March, 2015.


*Sharon Lovelace Blackburn*
SHARON  LOVELACE  BLACKBURN
UNITED STATES DISTRICT JUDGE